

## Notice of Service of Process

MSY / ALL
Transmittal Number: 17137085
Date Processed: 09/14/2017

| | |
|---|---|
| Primary Contact: | David Schonbrun<br>Hiscox USA<br>711 Westchester Ave<br>Ste 402<br>White Plains, NY 10604-3531 |
| Electronic copy provided to: | Michael Baker<br>Helen Weinstein |

| | |
|---|---|
| Entity: | Hiscox Inc.<br>Entity ID Number  2845497 |
| Entity Served: | Hiscox, Inc. |
| Title of Action: | National Enclosure Company, LLC vs. Hiscox, Inc |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Cuyahoga County Court of Common Pleas, Ohio |
| Case/Reference No: | CV 17 885483 |
| Jurisdiction Served: | Ohio |
| Date Served on CSC: | 09/12/2017 |
| Answer or Appearance Due: | 28 Days |
| Originally Served On: | CSC |
| How Served: | Federal Express |
| Sender Information: | Amanda M. Leffler<br>330-353-5711 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com



SUMMONS IN A CIVIL ACTION     COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO. CV17885483 | D1 FX | SUMMONS NO. 33212390 |
|---|---|---|

Rule 4 (B) Ohio

Rules of Civil Procedure

| NATIONAL ENCLOSURE COMPANY, LLC | PLAINTIFF |
|---|---|
| VS | |
| HISCOX, INC., ET AL. | DEFENDANT |

**SUMMONS**

HISCOX, INC.
C/O COUNSEL, LEGAL DEPT
CORPORATION SERVICE CO.
30 WEST BROAD ST., SUITE 1330

COLUMBUS OH 43215-0000

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

AMANDA M LEFFLER
388 S MAIN ST

SUITE 500
AKRON, OH 44311-0000

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

DAVID T MATIA
Do not contact Judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD
Clerk of the Court of Common Pleas

By_____
Deputy

| DATE SENT |
|---|
| Sep 7, 2017 |

COMPLAINT FILED   09/05/2017



CMSN130



NAILAH K. BYRD
CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

New Case Electronically Filed:
September 5, 2017 15:24

By: AMANDA M. LEFFLER 0075467

Confirmation Nbr. 1163717

NATIONAL ENCLOSURE COMPANY, LLC                    CV 17 885483

vs.

HISCOX, INC., ET AL.                    Judge:  DAVID T. MATIA

Pages Filed:  36

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| NATIONAL ENCLOSURE COMPANY, LLC<br>5075 Carpenter Road<br>Ypsilanti, Michigan 48197 | ) ) ) ) ) | CASE NO:<br><br>JUDGE: |
| Plaintiff, | ) ) ) ) | COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT |
| vs. | ) ) ) | |
| HISCOX, INC.<br>C/O Counsel, Legal Department<br>357 Main Street<br>Armonk, New York 10504 | ) ) ) ) ) | JURY DEMAND ENDORSED HEREON |
| Also Serve: | ) ) ) | |
| Corporation Service Company<br>50 West Broad Street Suite 1330<br>Columbus, Ohio 43215 | ) ) ) ) | |
| and | ) ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. UNS2516200.11<br>C/O Counsel, Legal Department<br>357 Main Street<br>Armonk, New York 10504 | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, National Enclosure Company, LLC ("NEC") by its undersigned counsel, for its

Complaint against Defendant Hiscox, Inc. ("Hiscox") and certain Underwriters at Lloyd's,

London subscribing to Builders Risk Policy No. UNS2516200.11 ("Underwriters"), alleges and states as follows:

<u>**NATURE OF THE CASE**</u>

1.        This is a civil action for declaratory relief and monetary damages arising out of a dispute over the obligations of Hiscox and Underwriters to indemnify NEC for losses sustained during a construction project insured by a "Builder's Risk Policy" issued by Hiscox and Underwriters.

2.        NEC seeks a declaration that the damage sustained to the project at issue, which is more fully described below, arose from a single occurrence that is covered by the Builders Risk Policy.   NEC also seeks a further declaration of the present and future rights, duties, and liabilities of all of the parties under the Builders Risk Policy.

3.        NEC also seeks money damages and specific performance from Hiscox and Underwriters with respect to the breach of their contractual obligations to indemnify NEC in connection with damage to the project.

<u>**PARTIES**</u>

4.        NEC is a limited liability company organized under the laws of the State of Michigan, with its principal place of business in Ypsilanti, Michigan.  NEC is registered in the State of Ohio as a foreign corporation and is authorized to conduct business in this state.  NEC also maintains fabrication operations in the State of Ohio.

5.        Hiscox is a corporation organized under the laws of the State of Delaware. Hiscox is engaged in the business of selling insurance policies in Ohio.  Hiscox is an approved Lloyd's coverholder and underwrites surplus lines business on behalf of certain Lloyd's Syndicates.  Hiscox acts as a general agent and underwriting manager for Underwriters.

2

6.      Underwriters is an unincorporated association with its principal place of business in London, United Kingdom.  Underwriters' members or syndicates underwrite and subscribe to policies of insurance.  Upon information and belief, the syndicates underwriting and subscribing to the Builders Risk Policy at issue herein included Syndicate 3264.  The identities of all persons or entities subscribing to the Builders Risk Policy at issue are presently unknown.

### JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over the parties pursuant to Ohio Revised Code § 2307.382, § 3901.17 and Ohio Civil Rule 4.3(A), because Hiscox, within the time period relevant to the claims asserted herein, has been licensed to do business in Ohio and both Hiscox and Underwriters have contracted to insure persons, property, or risks located within Ohio.

8.      This Court has subject matter jurisdiction over this matter pursuant to Ohio Revised Code § 2305.01 and Ohio Revised Code Chapter 2721.

9.      Venue is proper in Cuyahoga County, as set forth in Ohio Civil Rule 3(B), because the project insured by the Builders Risk Policy, which forms the subject matter of this action, was located in this County.

### THE CELEBREZZE BUILDING PROJECT

10.      NEC is a nationally-ranked curtainwall and advanced façade contractor.  NEC was retained as a subcontractor to dck North America, LLC ("DCK") for renovations to the Anthony J. Celebrezze Federal Building located at 1240 E 9th St, Cleveland, Ohio 44199 (the "Project").  NEC's scope of work included providing labor and materials for the installation of a new curtainwall façade on the Project.

11.      NEC's work on the Project was accomplished through the use of a specially-designed swing stage that could be raised and lowered along the building's exterior.  Utilizing

3

this swing stage, NEC removed existing materials and installed the new curtain wall façade. NEC's work scope also included certain welding operations necessary to the completion of its work.

12.    While NEC is extremely experienced in projects of this nature, it customarily carries out its work through the interior of the building.  However, due to the nature of the work being performed on the Project, NEC was required to perform its work from the building's exterior.  In order to perform its work in this manner, NEC leased a swing stage specifically designed and constructed for the Project.  The swing stage design was intended to take into consideration, among other things, the Project's specifications and anticipated weather conditions.

13.    Nonetheless, the method of construction required by the Project caused the swing stage to repeatedly impact the newly-installed curtain wall façade, causing damage to NEC's work and requiring repair and replacement of the materials it had installed.  While this series of impacts occurred over a number of days, they were all the result of a single originating cause.

14.    The damage described above was discovered during punch list inspections conducted on the Project.  NEC was then required to undertake repairs of the damaged work at substantial expense.

**THE BUILDERS RISK POLICY**

15.    Hiscox, on behalf of Underwriters, issued Policy No. UNS2516200.11 to DCK with an initial policy period of June 21, 2011 to September 25, 2014 (the "Policy").  A copy of the Policy is attached hereto as Exhibit A.  The original policy period was extended on several occasions, and terminated no earlier than May 31, 2016.  The Policy is an "all risks" Builders Risk policy and "insures against all risks of direct physical loss of or damage to insured property

4

while at the location of the Insured Project . . . all within the policy territory and occurring during the term of the policy."

16.     NEC is an Additional Insured under the Policy.

17.     All conditions and requirements imposed upon DCK or NEC by the Policy, including the payment of premiums, have been satisfied and/or have been waived and/or are subject to an estoppel against Hiscox and Underwriters.

18.     The Policy has been in full force and effect at all pertinent times.

19.     The Policy insures against the damage sustained to the Project as more fully described above.

20.     The Policy requires the payment of a deductible for each separate occurrence resulting in a loss.

21.     NEC submitted a claim to Hiscox during the policy period seeking indemnity coverage for the swing stage impact damage described above which also occurred during the policy period.

22.     Hiscox and Underwriters have taken the position that each impact of the swing stage to the Project is a separate occurrence requiring payment of a separate deductible for each occurrence. Hiscox and Underwriters claim that since no one occurrence resulted in a loss exceeding the per-occurrence deductible, there is no coverage under the Policy. Hiscox and Underwriters have therefore denied coverage for the claim submitted by NEC.

23.     The denial of coverage is contrary to law and to its own Policy language, which dictates the conclusion that all damage to the Project arose from a single occurrence.

5

## COUNT ONE
### *(Declaratory Judgment - Number of Occurrences)*

24.     NEC repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully rewritten and set forth herein.

25.     This is a claim for a declaratory judgment pursuant to R.C. 2721.02(A) and Rule 57 of the Ohio Rules of Civil Procedure.  NEC seeks a judicial determination of the parties' rights and duties with respect to an actual controversy arising out of the Policy.

26.     The Policy written and issued by Hiscox and Underwriters provides coverage for property damage during the period of the policy arising out of an "occurrence." "Occurrence" is defined in the Policy as "an accident, incident, or a series of accidents or incidents arising immediately out of a single event or originating cause and includes all resultant or concomitant losses wherever located."

27.     The number of occurrences is determined by reference to the underlying cause of the loss, from the standpoint of the policyholder's liability, without regard to the number or timing of the resulting injury(ies).

28.     An actual and justiciable controversy exists between the parties as to whether the above-described damage to the Project arose out of a single occurrence or multiple occurrences. Resolution of this controversy is necessary in order to determine the immediate obligations of Hiscox and Underwriters to indemnify NEC with respect to past, pending and future repairs required at the Project.

29.     Declaratory relief will resolve the dispute between the parties and determine their respective rights and obligations under the Policy at issue.

6

## COUNT TWO
*(Declaratory Judgment - Duty to Indemnify)*

30.     NEC repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully rewritten and set forth herein.

31.     This is a claim for a declaratory judgment pursuant to R.C. 2721.02(A) and Rule 57 of the Ohio Rules of Civil Procedure.  NEC seeks a judicial determination of the rights and duties of the parties to this action with respect to the Policy.

32.     NEC has incurred and continues to incur substantial losses for the repair of damage sustained by the Project, as described herein.

33.     Upon payment of one per-occurrence deductible(s) specified in the Policy, Hiscox and Underwriters are required to indemnify NEC for the repair of such damage.

34.     An actual and justiciable controversy exists between the parties hereto as to the indemnity obligations of Hiscox and Underwriters.  Resolution of this controversy is necessary in order to determine NEC's right to indemnity from Hiscox and Underwritners under the Policy.

35.     Declaratory relief will resolve the dispute between the parties and determine their respective rights and obligations under the Policy.

## COUNT THREE
*(Damages for Breach of Contract)*

36.     NEC repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully rewritten and set forth herein.

37.     The damage to the Project described above arose from a single occurrence, and arose from a cause not otherwise excluded under the Policy.  The damage occurred to property covered by the Policy.

7

38.     Upon information and belief, all premiums and other amounts due under the Policy have been paid.  NEC has substantially performed all of its obligations under the Policy to the extent compliance with such obligations has not been waived by Hiscox or Underwriters, or to the extent Hiscox and/or Underwriters would be estopped from demanding compliance with such obligations or the performance of such obligations would be futile.

39.     NEC has incurred and continues to incur substantial costs to repair damage to the Project as described herein.

40.     Hiscox and Underwriters have failed to indemnify NEC for the costs incurred to repair the Project, and have taken coverage positions demonstrably contrary to the Policy's language.

41.     By declining to indemnify NEC for the costs incurred to repair damage to the Project, Hiscox and Underwriters have breached the Policy.

42.     As a direct and proximate result of Hiscox and Underwriters' breach of the Policy, NEC has been deprived of the Policy's benefits and coverages, resulting in damage to NEC in an amount to be proven at trial, but believed to be in excess of $25,000.

**WHEREFORE**, plaintiff National Enclosure Company, LLC requests this Court to enter judgment as follows:

a.      on Count One, declaring that the damage occurring to the Project that is the subject of this Complaint arose out of a single occurrence;

b.      on Count Two, declaring that Hiscox and Underwriters are jointly and severally obligated under the terms of the Policy to indemnify NEC for the cost of repairing the damage to the Project described herein;

c.      on Count Three, awarding any and all damages caused by Hiscox and Underwriters' breach of the Policy, in an amount to be determined, and attorney's fees and costs of bringing this action;

d.      on all counts, pre- and post-judgment interest; and

8

e.     such other and further relief as is just and equitable.

Respectfully submitted,

BROUSE McDOWELL

/s/ Amanda M. Leffler
Amanda M. Leffler (0075467)
P. Wesley Lambert (0076961)
388 S. Main Street, Suite 500
Akron, Ohio 44311
(330) 353-5711
(330) 253-8601 (fax)
aleffler@brouse.com
wlambert@brouse.com

JoZeff W. Gebolys (0093507)
600 Superior Avenue, E., #1600
Cleveland OH  44114
(330) 830-6830
(330) 830-6807 (fax)
jgebolys@brouse.com

*Counsel for Plaintiff National Enclosure Company, LLC*

## JURY DEMAND

Pursuant to Ohio R. Civ. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable by the maximum amount of jurors authorized by law.

/s/ Amanda M. Leffler
One of the attorneys for Plaintiff

9



**DECLARATIONS**

Effective with UNDERWRITERS AT LLOYD'S, LONDON
by Hiscox Inc. 357 Main Street Armonk, New York 10504



In accordance with the authorization granted to Hiscox Inc. under Contract No. B1234S2USBUI11 by certain Underwriters at Lloyd's, London, whose names and the proportions underwritten by them can be ascertained by reference to the said Contract, which bears the Seal of Lloyd's Policy Signing Office and is on file at the office of the said Agency and in consideration of the premium specified herein, the said Underwriters do hereby bind themselves, each for his own part and not one for another, their heirs, executors and administrators, to insure as follows in accordance with the terms and conditions contained or endorsed hereon.

| | | | |
|---|---|---|---|
| Broker No.: | 0000061 | Broker Name: | CRC of Florida Southern Cross Underwriters |
| | | Broker Address: | 700 W Camino Real, Suite 201 |
| | | | Boca Raton, FL 33433 - 5514 |
| Policy No: | UNS2516200.11 | Renewal Of: | |

**Builders Risk- Completed Value Basis**

1. **Named Insured:** dck north america, LLC

2. **Address:** 1900 State Route 51, Large, PA 15025

3. **Limit of Liability:** The Company's participation in this insurance is <u>100%</u> of the Limit of Liability being USD$<u>109,233,403</u> part of USD$<u>109,233,403</u> each occurrence for all perils, coverages and locations combined except where otherwise stipulated in the policy form and any endorsements thereto. The Company will only insure that portion of any loss, whether total or partial, including but not limited to that portion of associated expenses, if any, to the extent and in the manner provided in this insurance. Sub-limits of Liability shown in the Supplemental Declarations or elsewhere in this policy are part of and not in addition to the afore-mentioned Limit of Liability and are on a per occurrence basis unless otherwise specified.

4. **Notice of Claim to:** See Supplemental Declarations

5. **Policy Period:** Inception Date: <u>June 21, 2011</u> Expiration Date: <u>September 25, 2014</u> and as further set forth below:

   Inception date shown shall be at 12:01 A.M. (Standard Time) to Expiration date shown above at 12:01 A.M. (Standard Time) at the address of the Named Insured.

6. **Premium:** USD$<u>266,933</u> Term Deposit Premium (for Hiscox Inc participation) – All Risk excluding Terrorism
   USD$<u>26,693</u> Term Deposit Premium (for Hiscox Inc participation) - Terrorism
   Surplus Lines Tax $14,681.30

7. **Minimum & Earned Premium:** <u>25%</u> of the Term Deposit Premium

8. **Coverage(s):** Builders Risk Physical Damage per Policy forms and endorsements as listed herein:

9. **Processed Date:** September 19, 2011

10. **Cancellation:** Except for non-payment of premium, the Cancellation provision of the policy form is amended to allow 90 days for notifying the Insured of the Company's cancellation of the Policy.

11. **Attachments:** Hiscox Completed Value Builders Risk Policy Form, U.S. Terrorism Risk Insurance Act of 2002 as amended New & Renewal Business Endorsement, Economic And Trade Sanctions Policyholder Notice, Biological or Chemical Materials Exclusion, and Claim Reporting Procedures

The Certificate terms and conditions contained herein or endorsed hereon and such other provisions, agreements or conditions as may be endorsed hereon or added hereto are hereby incorporated in this Certificate. No representative of the Underwriters shall have the power to waive or be deemed to have waived any provision or condition of this Certificate unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this Certificate exist or be claimed by the Insured(s) unless so written or attached.

IN WITNESS WHEREOF this Policy has been signed at Armonk, New York

**NO PROVISIONS**

The insurance hereby evidenced is written by an approved nonlicensed insurer in the State of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

Hiscox Inc.



**HISCOX**        **Economic And Trade Sanctions Policyholder Notice**

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned
Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a
Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned
Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy
may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional. You may also visit the
US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.

 **HISCOX**  U.S. Terrorism Risk Insurance Act of 2002 as amended
New & Renewal Business Endorsement

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

In consideration of an additional premium of USD $26,693 paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2014, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

LMA5091
21 December



**HISCOX**  Biological Or Chemical Materials Exclusion

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

06/02/03
NMA2962

---

**Completed Value Builders Risk
SECTION I - Policy Declaration**

---

**ISSUING COMPANY:**   Hiscox Inc. on behalf of certain Underwriters at Lloyd's, London (non admitted) which is Rated A, Financial Size Category is XV and hereinafter called "the Company".

*Some of the words the Company use have a special meaning in this policy. If a word is in bold face type followed by an asterisk please read the definitions section.*

---

1. NAMED INSURED(S):   **dck north america, LLC**

2. CORPORATE ADDRESS:   **1900 State Route 51, Large, PA 15025**

3. ADDITIONAL INSURED(S):  **dck worldwide, LLC & dck worldwide holdings, Inc.**

   To the extent required by any contract or subcontract for an **INSURED PROJECT\***, and then only as their respective interests may appear, all owners, contractors and subcontractors of every tier and any other individual or entity specified in such contract or subcontract are recognized as Additional Insureds hereunder.

   Additional Named Insureds as provided above may be as shown on ACORD Certificates of Insurance issued by the Broker of Record, copies of which will be forwarded to this Company and kept on file.

   **All hereinafter referred to as the Insured**

   The Named Insured shall be deemed the sole and irrevocable agent of each and every Insured under this policy for the purpose of giving or receiving any notices to / from the Company, giving instructions to or agreeing with the Company for alterations of this policy and making or receiving payments of premiums or adjustments of premium.

4. DESCRIPTION OF INSURED PROJECT\* (Including Project Name and/or Contract Number as applicable):

   This is a 32 story existing steel frame office building with concrete floors and roof and two level basement. The contractor will be replacing all windows and the entire exterior façade with an insulated curtain wall panels. This work will be phased over the three year project one face of the building at a time. Roofing (covering only – not the concrete deck) will also be replaced and  a new mail screening room will be constructed and renovation of DFAS space in the basement.

5. LOCATION OF INSURED PROJECT\*:

   1240 E. 9th Street, Cleveland, OH 44119

6. ESTIMATED COMPLETED VALUE OF INSURED PROJECT\* AT POLICY INCEPTION:

   A. Estimated Construction Contract Price: $109,233,403;

   B. Value of all property not declared in (i) above to be insured by this policy and intended for installation under the construction contract, whether supplied by the project owner(s) or other(s):$_____;

   C. Existing Structures forming a part of the **INSURED PROJECT\*** which is covered on an All Risk basis (when coverage is included by Endorsement): $_____;

   D. Delay in Completion Extension (when coverage is included by Endorsement): $_____;

   Estimated Completed Value of  INSURED PROJECT\* at policy inception (Sum of A to D above): $109,233,403;

7. LOSS PAYABLE:

   Loss, if any, shall be adjusted with and made payable to the Named Insured, or as per order of the Named Insured, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

---

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

8.  **TERM OF INSURANCE:**

This policy shall be effective on <u>June 21, 2011</u> and shall expire on <u>September 25, 2014</u> both at 12:01 A.M. standard time, at the location of the **INSURED PROJECT\*** and applying as follows:

> June 21, 2011 – September 21, 2011 – Procurement & Idle Period
>
> September 21, 2011 – September 25, 2014 – Construction Period.

Notwithstanding the foregoing or subsequent endorsements hereto, liability under this policy will apply only for such periods commencing directly with work at the location of the **INSURED PROJECT\*** and ending upon the earlier of the formal acceptance by the project owner(s), the placing of the **INSURED PROJECT\*** or any portion of the insured property into commercial service for its intended purpose, the expiry of the Named Insured's interest or the expiration or cancellation date as herein provided, unless otherwise agreed by endorsement. If applicable the term of insurance includes a **TESTING PERIOD\*** not exceeding <u>Not Applicable</u> consecutive days.

Notwithstanding the foregoing provisions of the policy, the policy is extended to cover the **INSURED PROJECT\*** during periods of **OCCUPANCY\*** or **COMMERCIAL SERVICE\*** occurring prior to or after completion of the **INSURED PROJECT\*** but prior to final acceptance by the Owner for up to a period of <u>Unlimited</u> consecutive weeks.

The following additional conditions apply to any building(s), structures, plants or portion(s) of the **INSURED PROJECT\*** that has become occupied or is placed into **COMMERCIAL SERVICE\***:

**A.**  The Insured shall immediately report any increase in hazard beyond that provided for in the Policy;

**B.**  All fire protection, security and other protective devices and systems shall be installed, tested, activated and certified by local authorities, where required;

**C.**  If coverage applies, Delay in Completion coverage shall not apply during periods of **OCCUPANCY\*** or **COMMERCIAL SERVICE\*** unless otherwise endorsed to extend during such period.

9.  **EXTENSION OF TERM OF INSURANCE:**

With prior notification to and agreement by the Company if the **INSURED PROJECT\*** has not been completed on schedule, this policy may be extended for up to <u>three</u> months, exclusive of the **TESTING PERIOD\***, at the proportional extension rate(s) as provided in the policy and if applicable, extension of the **TESTING PERIOD\*** shall be subject to a one (1) month extension at <u>Not Applicable</u> of the proportional extension rate(s) for the TESTING . Extensions beyond this period and extensions of the **TESTING PERIOD\*** are subject to payment of additional premium at rates and terms to be developed by the Company at the time of the Company's agreement to such additional extensions.

10.  **PARTICIPATION:**

This Policy covers for <u>100%</u> interest in this insurance and the Company shall not be liable for more than <u>100%</u> of the Limit(s), sublimit(s) and / or aggregate limit(s) set forth in this policy.

11.  **POLICY LIMIT:**

The Company will not be liable for more than its proportion $109,233,403 in any one occurrence and further subject to its proportion of the following limits, sublimits and aggregate limits:

| $ | 109,233,403 | physical damage (hard costs + owner supplied material) | | |
|---|---|---|---|---|
| $ | Not Covered | physical damage to Existing Property | ☐ Legal Liability | ☐ All Risk |
| $ | Not Covered | Delay in Completion-Soft Costs and/or Loss of Rental Income and/or Loss of Profits **(subject to scheduled sublimits & policy aggregate)** | | |
| $ | 1,000,000 | physical damage to property in Transit **(per conveyance)** | | |
| $ | 2,500,000 | physical damage to property in Offsite Temporary Storage and/or Offsite Fabrication **(per location)** | | |
| $ | 250,000 | or 20% of the amount of physical loss or damage to insured property, whichever is less – Expediting Expense | | |
| $ | Not Covered | Trees, Plants, Shrubs & Landscaping Materials **(maximum $2,500 per item including landscaping)** | | |
| $ | 100,000 | physical damage to Plans & Blueprints & Other Contract Documents | | |
| $ | 100,000 | Fire Brigade Charges & Extinguishing Expenses; | | |
| $ | 10,000,000 | or 25% of the amount of physical loss or damage to insured property, whichever is less – Debris Removal | | |
| $ | 5,000,000 | Ordinance & Law / Demolition & Increased Cost of Construction | | |

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

| $ | 250,000 | Contractor's Extra Expense |
|---|---|---|
| $ | 50,000 | Pollution & Contamination Cleanup & Decontamination **(Policy Aggregate)** |
| $ | Not Covered | Interior Water Intrusion Damage |
| $ | 50,000 | Claim Preparation Costs |
| $ | Not Covered | Mold & Fungus Remediation **(Policy Aggregate)** |
| $ | 50,000 | Architects and/or Engineers Fees in restoration following an insured loss |
| $ | 25,000,000 | **EARTHQUAKE*** (annual aggregate) |
| $ | 25,000,000 | **FLOOD*** (annual aggregate) except |
| $ | 109,233,403 | **NAMED WINDSTORM** ☐ (annual aggregate) ☒ (no aggregate) |

**In no event shall these sublimits of liability increase the Policy Limit of Liability.**

12.  **DEDUCTIBLES:**

From the amount of each claim for insured physical loss of or damage to property insured arising out of any one **OCCURRENCE***, there shall be deducted the applicable amount shown below, and then the liability of the Company shall be only for the amount of such insured loss or damage in excess thereof, subject to the Limit, Sublimits or Aggregate Limits of Liability set forth above.

| $ | 25,000 | physical loss of or damage to property insured ,except |
|---|---|---|
| $ | 25,000 | as respects water damage other than **FLOOD***; |
| _____ | | % of the total insured values at risk at the time and place of loss subject to a minimum deduction of $25,000 as respects the peril of **FLOOD***; |
| _____ | | % of the total insured values at risk at the time and place of loss subject to a minimum deduction of $25,000 as respects the peril of **EARTHQUAKE***; |
| _____ | | % of the total insured values at risk at the time and place of loss subject to a minimum deduction of $25,000 as respects the peril of **NAMED WINDSTORM***; |
| _____ | | % of the total insured values at risk at the time and place of loss subject to a minimum deduction of $25,000 as respects the peril of **WINDSTORM***; |
| $ | Not Covered | to property insured while undergoing **HOT TESTING***; |

When a percentage (%) is entered absent a corresponding minimum dollar amount above, the percentage shall be applied without minimum. When a dollar amount is entered absent a corresponding percentage (%), the word minimum is deleted.

In the event that more than one deductible shown above or specified in any endorsement issued hereunder shall apply to insured physical loss of or damage to property insured in any one **OCCURRENCE***, only the largest shall be applied.

It is understood that as respects Delay In Completion coverage, if applicable hereunder, the **DEDUCTIBLE PERIOD*** stated in the Delay In Completion Endorsement attached hereto will always be applied in addition to any dollar or percentage deductible stated for physical damage.

13.  **DEPOSIT PREMIUM / REPORTING / ADJUSTMENT:**

A.  **Deposit Premium:**

The term deposit premium under this section of the policy is $293,626 and shall be subject to a minimum and earned premium of 25% of the term deposit premium. The deposit premium shall be adjusted in accordance with the provisions as outlined in Paragraph B and Paragraph C below. When coverage is applicable, the deposit premium herein is inclusive of the Delay in Completion Extension coverage(s) premium and/or other endorsement premium effective as of the inception of this Policy and is also shown in the applicable Endorsement unless otherwise stated. The deposit premium is due and payable to the Company 30 days after policy effective date unless otherwise stated.

B.  **Reporting Provisions:**

At the time of expiration, cancellation, or any requested policy extension, the Named Insured shall report to the Company the Estimated Completed Value of the **INSURED PROJECT*** including, but not limited to, all change orders, wages, expenses, materials, supplies, equipment, machinery and such other charges which became or will become a part of or were or will be expended in the project, all whether provided by the owner(s) or others.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

C.  **Premium Adjustment:**

(1)  The final earned premium for this policy shall be calculated by applying the rates used for the purpose of computing the deposit premium to the actual term of coverage and the Estimated Completed Value as reported in accordance with Paragraph B above, subject to any minimum and earned premium as stated in Paragraph A above.

(2)  If the premium so calculated shall differ from the deposit premium stated in (i) above, such difference shall be due and payable to the Named Insured or the Company, as the case may be, subject to any minimum and earned premium as stated in (i) above.

(3)  The rates used for the purpose of calculating the deposit premium and the final earned premium are:

| Exposure | Original Policy Term | Annual Rate | Deposit Premium |
|---|---|---|---|
| Installation / Construction | 3.266 years | .0765 / $100 | $251,933 |
| Named Windstorm | months* | / $100 / Month | $ |
| Existing Property | years | / $100 | $ |
| Delay in Completion | years | / $100 | $ |
| HOT TESTING* | months** | / $100 / Month | $ |
| Procurement Period | 0.250 years | Flat Charge | $15,000 |
| Terrorism | 3.266 years | 10%ninety | $90 |
| | | Total Deposit Premium | $293,626 |
| | | Hiscox 100% Share | $293,626 |

\* As used above, the term "month" shall mean any calendar month or part thereof during the period from June 1 through November 30 of each policy year

\*\*As used above, the term "month" shall mean any period of (30) thirty consecutive days from the commencement of HOT TESTING* and shall include all idle periods

14.  **POLICY TERRITORY:**

This policy covers property within the fifty (50) states comprising the United States of America and within the District of Columbia including their coastal waters, unless otherwise endorsed to the policy.

15.  **CANCELLATION:**

A.  This policy may be canceled by the Named Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured, at the address shown in this policy or last known address, written notice stating when, not less than **ninety (90)** days thereafter such cancellation shall be effective, except in the event of the Named Insured's non-payment of any premium due, said notice shall be **ten (10)** days. The mailing of notice as aforementioned shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

B.  In the event of cancellation, premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

C.  If the Named Insured cancels, earned premium will be computed in accordance with Paragraph 13 of the Declarations plus **ten percent (10%)** short rate penalty. If the Company cancels, earned premium will be computed in accordance with Paragraph 13 of the Declarations. Any premium so computed shall always be subject to any minimum premium set forth in Paragraph 13 of the Declarations.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

---

**Completed Value Builders Risk
SECTION II – Coverage & Exclusions**

---

1. **INSURING AGREEMENT:**

   This policy, subject to the terms, exclusions, limitations and conditions contained herein or endorsed hereto, insures against all risks of direct physical loss of or damage to insured property while at the location of the **INSURED PROJECT***
   while in offsite temporary storage, offsite fabrication or while in inland transit, all within the policy territory and occurring during the term of this policy.

2. **PROPERTY INSURED:**

   A. **At the location of the INSURED PROJECT*:**

      **(1)** Permanent Works - All materials, supplies, equipment, machinery, and other property of a similar nature, being property of the Insured or of others for which the Insured may be contractually responsible, the value of which has been included in the estimated value of the **INSURED PROJECT*** in the DECLARATIONS, all when used or to be used in or incidental to the demolition of existing structures, site preparation, fabrication or assembly, installation or erection or the construction of or alteration, renovation, rehabilitation of the **INSURED PROJECT***.

      **(2)** Temporary works - All scaffolding, form work, fences, shoring, hoarding, falsework and temporary buildings all incidental to the project and the value of which has been included in the estimated value of the **INSURED PROJECT*** in the DECLARATIONS.

3. **EXTENSIONS OF COVERAGE:**

   A. **TRANSIT:**

      This policy is extended to include transit coverage with respect to property to be used in or incidental to completion of the **INSURED PROJECT*** from the commencement of loading at the original point of shipment anywhere within the policy territory, until completion of unloading at a location of the **INSURED PROJECT***, including shipments on inland or coastal waters but excluding ocean marine shipments.

      The Insured agrees to keep records of all shipments insured hereunder and make them available to the Company upon request.

      This coverage shall be void if the Insured enters into any special agreement with carriers, releasing them from their common law or statutory liability or agreeing that this insurance shall in any way inure to the benefit of such carriers; however, the Insured may, without prejudice to this coverage, accept such bills of lading, receipts, or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of property insured.

   B. **OFFSITE TEMPORARY STORAGE AND/OR OFFSITE FABRICATION:**

      This policy is extended to cover property to be used in or incidental to completion of an **INSURED PROJECT***, while in temporary storage anywhere within the policy territory but excluding such property while in the course of manufacturing or processing at the manufacturer's or supplier's site or while in transit.

   C. **EXPEDITING EXPENSE:**

      In the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay, for the reasonable extra costs to make temporary repairs and to expedite the permanent repair or replacement of the insured property which is damaged by a peril not otherwise excluded, including additional wages for overtime, night work, and work on public holidays and the extra costs of express freight or other rapid means of transportation.

---

HISCOXBLDRSRSK.DOC                    Page 5 of 23                                11-08

D.  **TREES, SHRUBS, PLANTINGS AND LANDSCAPING:**

This policy is extended to cover direct physical loss or damage insured hereunder and occurring during the policy period to trees, plantings, shrubs and landscaping materials which are part of and while located at the **INSURED PROJECT***;

E.  **PLANS, BLUEPRINTS, DRAWINGS, RENDERINGS, SPECIFICATIONS OR OTHER CONTRACT DOCUMENTS & MODELS:**

This policy is extended to cover direct physical loss of or damage insured hereunder and occurring during the policy period to plans, blueprints, drawings, renderings, specifications or other contract documents (whether paper or electronic media format) and models while at the location of the **INSURED PROJECT***.

F.  **FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES:**

In the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay the following reasonable and necessary expenses:

(1)  fire brigade charges and other extinguishing expenses for which the Named Insured may be assessed;

(2)  loss of fire extinguishing materials expended in fighting fire, including the loss of similar material which may be brought on the project location for the purpose of extinguishing a fire already in progress at the time such materials are ordered and delivered, but liability shall not exceed the combined value of such extinguishing materials which are on the premises, or on adjacent premises, if such materials are jointly owned at the time of loss.

G.  **DEBRIS REMOVAL:**

In the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay the following necessary and reasonable costs:

(1)  costs to remove debris being an insured part of the property from the project location of the Insured; and/or

(2)  cost of cleanup, at the project location of the Insured, made necessary as a result of such direct physical loss or damage.

The Company will not pay the expense or cost to extract **CONTAMINANTS OR POLLUTANTS*** from land, water and / or debris, or to remove, restore, or replace contaminated or polluted land or water. Nor will the Company remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by **CONTAMINANTS OR POLLUTANTS***, whether or not such removal, transport or decontamination is required by law, ordinance or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than **180 days** after the date of such physical loss or damage.

H.  **HOT TESTING*:**

When a specific premium and rate or acknowledgement of coverage are entered for **HOT TESTING*** in Paragraph 13 C. of the DECLARATIONS and a **TESTING PERIOD*** has been identified in Paragraph 8 of the DECLARATIONS, this policy is extended to cover direct physical loss or damage to the property insured which is caused by or results from **HOT TESTING***.

The Insured warrants that supervisory and safety systems shall not be deliberately or knowingly circumvented during the conduct of **TESTING***. This warranty shall not apply when it is standard accepted industry practice and / or manufacturer's specification that such circumvention is necessary for the conduct of individual activities within the conduct of **TESTING*** provided that such circumvention does not extend beyond said individual activities. It is further warranted that all instrumentation will be installed and activated prior to the conduct of any **TESTING***.

I.  ORDINANCE OR LAW/ DEMOLITION AND INCREASED COST OF CONSTRUCTION:

In the event of direct physical loss or damage insured hereunder and occurring during the policy period to insured property that causes the enforcement of any law or ordinance in effect at the time of loss that regulates the repair, rebuilding or re-construction of the damaged portions of an **INSURED PROJECT\***, then to the extent required by such enforcement of any law or ordinance, the Company shall be liable for:

(1)  Cost of demolishing any undamaged parts of a project including the cost of clearing the site.

(2)  Increased cost of repair, rebuilding or re-construction of the damaged portions of an **INSURED PROJECT\*** on the same premises but not exceeding like height, floor area, style and limited to the minimum requirements of the law or ordinance.

(3)  If applicable under the policy or endorsements thereto, the increase in the Delay In Completion coverage loss insured hereunder arising out of the additional time required to comply with the requirements of said law or ordinance. Such additional time will not exceed **thirty (30)** consecutive days.

With respect to coverage provided by Paragraph 2., the Company shall not be liable for any loss, unless and until the damaged or destroyed building(s) or structure(s) is actually rebuilt or replaced on the same premises with due diligence and dispatch and in no event, unless repair or replacement is completed within **two (2)** years after the date of destruction or damage or within such further time as the Company may allow, in writing, later than during **the two (2)** years from the date of such loss or damage..

The following costs are not reimbursable in the event of a loss hereunder:

(1)  Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any law or ordinance regulating asbestos or other hazardous material;

(2)  Cost of any governmental direction or request declaring that asbestos or other hazardous material present in or part of or utilized on any undamaged portion of insured property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

(3)  Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any law or ordinance regulating **CONTAMINANTS OR POLLUTANTS\***;

(4)  Cost of compliance with the enforcement of any law or ordinance which the insured or owner would have otherwise incurred by nature of such law or ordinance in the absence of any loss or damage covered by this policy.

J.  CONTRACTOR'S EXTRA EXPENSE:

In the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay the following expenses under this policy - Extra Expense incurred as a result of direct physical loss or damage to the **INSURED PROJECT\*** hereunder.

Extra Expense shall be defined as the reasonable and necessary excess costs incurred during the period of restoration and repair that are over and above the total costs that would normally have been incurred during the same period of time had no loss or damage occurred. Extra expense shall include, but not be limited to equipment rental, emergency expenses, temporary use of property, demobilization and remobilization of equipment and facilities and expenses necessarily incurred to reduce loss excluding, however, any Additional Interest Expense, Debt Service, Business Interruption, Loss of Income, Loss or Earnings, Loss of Rents or Delay In Completion and/or Acceleration Expense.

Any costs incurred hereunder shall be subject to the deductible applicable to the cause of loss that necessitates such costs. In the event that the amount of physical loss or damage to insured property as a result of a covered cause of loss under this policy is less than the applicable deductible stated elsewhere in this policy, the Company shall not accept a claim for nor be liable for excess costs as covered herein.

K.  POLLUTION & CONTAMINATION CLEAN UP & DECONTAMINATION:

In the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay the cost of cleanup or decontamination as a result of sudden and unforeseen loss caused by **CONTAMINANTS OR POLLUTANTS\*** on an **INSURED PROJECT\*** site at time of **OCCURRENCE\*** but

restricted to the **INSURED PROJECT\*** site; demolition, or removal of any insured property to the extent required by the enforcement of any law, regulation, or ordinance regulating the construction, repair, or demolition of buildings or structures subsequent to and necessitated by a loss caused by an insured peril provided that such law, regulation, or ordinance is in effect at the time of loss.  No additional costs of reconstruction or additional costs of repair by reason of any law, regulation, or ordinance are included hereunder.  The foregoing shall not invalidate any other provisions of the policy or endorsements attached to the policy.

Any costs incurred hereunder shall be subject to the deductible applicable to the cause of loss that necessitates such costs.

L.   **INTERIOR WATER INTRUSION:**

In the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay for loss or damage to covered property arising from, contributed to, or resulting from rain, snow, sleet or ice, all whether wind driven or not, entering the interior of any building(s) or structure(s) when the roof and outside walls are **incomplete \***.  However, if said exterior of the building is complete this limitation of coverage does not apply. The Insured agrees that it will take all appropriate precautions to avoid loss or damage to covered property from the perils enumerated above.

**DEFINITION:**

\*Incomplete - means at the time of loss or damage the envelope of the building or structure which includes the exterior walls and roofing system is not watertight based on the structure's design.

M.   **CLAIMS PREPARATION COSTS:**

This policy is extended is extended to cover the reasonable and necessary additional expenses incurred by the Insured which are directly related to the preparation, substantiation and / or documentation of any claim for direct physical loss or damage insured hereunder and occurring during the policy period to insured property as a result of a covered cause of loss under this policy. Any costs incurred for the services or efforts of a lawyer or a Public Adjuster are expressly excluded.

The Company shall have no liability for any additional expense hereunder unless and until a claim for physical loss or damage to insured property as a result of a covered cause of loss under this policy has been submitted to and accepted by the Company.

Any costs incurred hereunder shall be subject to the deductible applicable to the cause of loss that necessitates such costs. In the event that the amount of physical loss or damage to insured property as a result of a covered cause of loss under this policy is less than the applicable deductible stated elsewhere in this policy, the Company shall not accept a claim for nor be liable for additional expenses as covered herein.

N.   **MOLD REMEDIATION EXPENSE:**

Notwithstanding the exclusion in the policy for loss or damage due to mold, fungus, mildew and spores in the event of direct physical loss or damage insured hereunder and occurring during the policy period, this policy is extended to cover mold remediation expenses incurred by the Insured, made necessary by insured physical loss or damage to the **INSURED PROJECT\*** or insured property as provided under the policy. This extension of coverage only applies to the portion of an **INSURED PROJECT\*** or insured property which directly sustained insured physical loss or damage.

Mold remediation expense means the reasonable and necessary costs not otherwise covered for:

(1)   Testing the indoor air quality for mold;

(2)   Testing the surfaces and materials of the **INSURED PROJECT\***, insured property or contents for mold;

(3)   Developing a mold remediation plan; and

(4)   Implementing a mold remediation plan including the clean up, removal, containment, treatment or disposal of mold;

Mold remediation shall also mean the reasonable and necessary costs, including increased cost, not otherwise covered for:

(1)   Removing debris solely due to mold; and

(2)   Repairing and replacing the **INSURED PROJECT\*** or insured property damaged or removed solely due to mold.

Mold remediation expense does not apply beyond the provisions as provided herein including any other consequential loss or damage as a result of mold.

Any costs incurred hereunder shall be subject to the deductible applicable to the cause of loss that necessitates such costs.

**Definition:**

(1) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

(2) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

(3) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

**O. ARCHITECTS AND ENGINEERS FEES:**

In the event of direct physical loss or damage insured hereunder and occurring during the policy period, this policy is extended to cover necessary and reasonable compensation for architect's or engineer's services and expenses incurred by the Insured in connection with the repair or replacement of the **INSURED PROJECT\***, but excluding any relating to improvements or betterments to the **INSURED PROJECT\***.

**P. PERMISSION TO OCCUPY / OPERATE:**

This policy is extended to permit partial occupancy / operation of any machinery, facility or other property insured hereunder being a part of an **INSURED PROJECT\*** but prior to final acceptance by the Owner and coverage shall not be reduced due to such partial occupancy / operation except as provided herein, provided that the Insured warrants that all fire protection and security systems shall be in service and fully operational prior to and during any such occupancy / operation. It is a condition hereof that the Insured, upon such knowledge, shall report any increase in hazard beyond that provided for in the policy.

If the Delay in Completion Extension of Coverage applies to the policy, coverage hereunder shall be null and void as respects any machinery, facility or other property which is occupied or put into operation unless otherwise amended by endorsement.

**4. PERILS EXCLUDED:**

This policy shall not pay for loss, damage or expense caused directly or indirectly and / or contributed to, in whole or in part, by any of the following excluded perils except as specifically allowed in a, b, c, d, f or j below:

A. Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, delay in completion, or non compliance with contract conditions, whether caused by a peril insured or otherwise, however the foregoing shall not exclude Delay in Completion Coverage when it is endorsed to this policy;

B. Cost of making good faulty or defective workmanship or material, unless direct physical loss or damage by a peril not otherwise excluded ensues and then this policy will cover for such ensuing physical loss or damage only;

C. Cost of making good fault, defect, error, deficiency or omission in design, plan or specification, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

D. Wear and tear, gradual deterioration, inherent vice, latent defect, corrosion, rust, dampness or dryness of the atmosphere, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

E. (1) War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack:

(a) by government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

(b) by military, naval or air forces; or

(c) by an agent of any such government, power, authority or force.

(2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental;

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

(3)   insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction;

(4)   any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this exclusion an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This policy also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Company alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured

(5)   hijacking or any unlawful seizure or wrongful exercise or control of any mode of transportation, including but not limited to aircraft, watercraft, truck(s), train(s) or automobile(s), including any attempted seizure of control, made by any person or persons.

**F.**   Nuclear reaction, nuclear radiation or radioactive contamination however such may have been caused; nevertheless if a fire arises directly or indirectly any of the foregoing, any loss or damage arising directly from that fire shall (subject to the provisions of this policy) be covered, excluding however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that fire;

**G.**   Disappearance or when revealed by inventory shortage alone;

**H.**   Infidelity, dishonesty or fraudulent activity of the Insured or any of the Insured's partners, officers, directors, trustees, employees or others to whom the insured property is entrusted;

**I.**   Loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever beyond the demolition of any damaged portion of the **INSURED PROJECT\*** no longer useful for its intended purpose;

**J.**   Actual, alleged or threatened release, discharge, escape or dispersal of **CONTAMINANTS OR POLLUTANTS\***, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical loss or damage insured by this policy;

Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from actual release, discharge, escape or dispersal of **CONTAMINANTS OR POLLUTANTS\***, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy;

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism or malicious mischief, leakage or accidental discharge from automatic **FIRE PROTECTION SYSTEMS\***;

**K.**   This policy does not cover:

(1)   Asbestos material removal;

(2)   Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material;

(3)   Any governmental order or direction declaring that asbestos material which is present in or part of or utilized on any portion of the **INSURED PROJECT\*** must be removed or modified;

**L.**   Loss or damage covered under any written or implied guarantee or warranty by any manufacturer or supplier, but only to the extent of recovery from such written or implied guarantee or warranty;

**M.**   Normal subsidence, settling, cracking, expansion, contraction or shrinkage of walls, floors, ceilings, buildings, foundations, patios, walkways, driveways or pavements;

**N.**   Cessation of the work, whether total or partial, unless such cessation has been directly occasioned by loss or damage covered under the policy. Cessation of the work, as used herein, shall not mean any period of time during which operations would not normally have been conducted such as Saturdays, Sundays or Holidays, nor shall it mean seasonal inactivity planned in advance or labor actions beyond the Insured's control, provided the location of the **INSURED PROJECT\*** is maintained and protected against loss during such inactivity.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

O.  Infestation, disease, freeze, drought and hail, weight of ice or snow or any damage caused by insects, vermin, rodents or animals, but only as respects EXTENSION OF COVERAGE - Trees, Plants, Shrubs And Landscaping.

P.  Erosion of graded or planted finish or rough grades which results from normally expected or predictable precipitation and surface water runoff.

Q.  As respects EXTENSION OF COVERAGE - Plans, Blueprints, Drawings, - electrical or magnetic injury to or errors and omissions in creating, processing or copying electronic records, however caused;

R.  Mold, mildew, fungus, spores or other micro-organism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

   This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

S.  This policy does not cover loss of or damage to any program, software or operating system, programming instruction or data arising out of or resulting from any failure, malfunction, deficiency, deletion, fault, VIRUS* or corruption, including but not limited to, loss or damage resulting from any authorized or unauthorized access in, of or to any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment, any program, computer software or operating systems, programming instructions or data.

   To the extent coverage for equipment, hardware, media or device is provided in the Policy, the following exclusion does not apply:

   (1)  if any of the matters described above results solely from direct physical loss of or direct physical damage to the equipment, hardware, media or device on which the program, software or operating system, programming instructions, or data are transported, processed or contained;

   (2)  to direct physical loss of or direct physical damage to tangible property insured that results from any of the matters described above

   For the purposes of this exclusion, program, software or operating system, programming instruction and data are not tangible property insured.

T.  The actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

U.  Loss or damage arising from, contributed to, or resulting from rain, snow, sleet or ice, all whether wind driven or not to property stored in the open unless the Named Insured has taken reasonable steps to protect said property from such loss or damage.

5.  **PROPERTY EXCLUDED:**

   This policy does not insure:

   A.  Land and land values and the value of cut fill and backfill materials existing at the project site prior to project commencement; however, to the extent included in the contract bid documents and declared for premium purposes, the value of fill and backfill materials purchased for use in the completion of the project is not excluded. Notwithstanding the foregoing, labor and material charges incurred to move, remove, place or otherwise handle cut, fill and backfill materials, whether insured or uninsured in the foregoing, are covered to the extent such charges are included in the contract bid documents and declared for premium purposes;

   B.  Contractor's tools, machinery, plant and equipment, including spare parts and accessories whether owned, loaned, hired or leased, and property of a similar nature not destined to become a permanent part of the completed **INSURED PROJECT** unless the value of the same is reported and additional premium is paid at rates and terms to be agreed as per endorsement to the Builders Risk policy;

   C.  Vehicles or equipment licensed for highway use, rolling stock, aircraft or watercraft;

   D.  Water, animals, standing timber and growing crops;

   E.  Accounts, bills, currency, stamps, deeds, evidence of debt, checks, money, securities, precious metals or precious stones or other property of a similar nature;

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

F.  Existing property at the location of the **INSURED PROJECT\*** unless separately declared to the Company in advance and specifically endorsed to the Builders Risk policy;

G.  Property located at other than the location of **INSURED PROJECT\*** except as covered under the Transit or Offsite Temporary Storage/Offsite Fabrication Extensions of Coverage;

H.  Prototype, developmental or used machinery and equipment but only as to damage while undergoing any form of testing, commissioning or startup unless specifically endorsed to the policy;

I.  Transmission and distribution lines outside of the **INSURED PROJECT \*;**

J.  Loss or damage to insured property while covered by Ocean Marine Insurance or while waterborne in the course of ocean shipment; off-shore property, except those structures and their contents extending from land or shore, waterborne vessels and their contents or floating docks permanently moored to a dock, river bank, or shore, are not to be considered as off-shore. In the Gulf of Mexico off Texas and Louisiana, "Off-Shore" is to seaward of the inland edge of the Lease block of the Plane Coordinate System, as defined on United States Department of Land Management Leasing Maps.

K.  Any property while located at any site which stores processes or otherwise handles or makes use of radioactive materials unless reported to and accepted by the Company. The foregoing shall not apply to locations or property making use of radioactive isotopes contained within equipment used for diagnostic or testing purposes.

---

### Completed Value Builders Risk
### SECTION III – Definitions

---

**Wherever in this Policy a word or words appear in capitalized bold face type followed by an Asterisk, the following definitions will be applied in the interpretation of such wording**

1. **COMMERCIAL SERVICE** shall be deemed to have occurred when an **INSURED PROJECT\*** or any portion thereof has been put to its intended use but only as respects such portion or portions put to use. The orientation or training of building management staff, the training of plant engineering and maintenance personnel, the establishment of a sales or rental office and completion of tenant fit out work shall not be considered **COMMERICAL SERVICE\*** on its own. See **OCCUPANCY\*** below.

2. **CONTAMINANTS OR POLLUTANTS** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

3. **EARTHQUAKE** means all land movement due to seismic activity, including but not limited to shocks, tremors, volcanic action, volcanic eruption, earth rising or shifting, landslide, subsidence, sinkhole, rock fall and tsunami.

**ISO EARTHQUAKE ZONES:**

| ISO ZONE 1 | Counties Of |
|---|---|
| Alaska Counties of | All Counties except Northslope |
| California Counties of | Alameda, Alpine, Contra Costa, Del Norte, Humboldt, Imperial, Inyo, Kern, Lake, Los Angeles, Marin, Mendocino, Mono, Monterey, Napa, Orange, Riverside, San Benito, San Bernardino, San Diego, San Francisco, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Santa Cruz, Solano, Sonoma and Ventura |
| Nevada Counties of | Carson City, Churchill, Douglas, Esmeralda, Humboldt, Lander, Lyon, Mineral, Nye, Pershing, Storey and Washoe |
| **ISO ZONE 2** | **Counties Of** |
| Arkansas | Clay, Craighead, Crittendon, Cross, Greene, Jackson, Mississippi & Poinsett |
| Hawaii | All Counties other than Honolulu and Kauai |
| Idaho | Bannock, Bear, Lake, Caribou, Clark, Franklin, Freemont & Oneida |
| Illinois | Alexander, Massac, Pulaski & Union |
| Kentucky | Ballard, Carlisle, Fulton, Graves, Hickman & McCracken |
| Mississippi | DeSoto |
| Missouri | Bollinger, Butler, Cape Girardeau, Dunkin, Mississippi, New Madrid, Pemiscot, Scott & Stoddard |
| Montana | Beaverhead, Broadwater, Flathead, Gallatin, Jefferson, Lewis & Clark, Madison, Meagher, Park, Powell & Yellowstone National Park |
| Nevada | Lincoln |
| Tennessee | Crockett, Dyer, Haywood, Lake, Lauderdale, Oblon, Shelby & Tipton |
| Utah | Box, Elder, Cache, Davis, Juab, Millard, Morgan, Salt Lake, Sanpete, Sevier, Tooele, Utah & Weber |
| Washington | Ciallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston & Whatcom |
| Wyoming | Teton & Yellowstone National Park |
| **ISO ZONE 3** | **Counties Of** |
| California | All California Counties not named under ISO ZONE 1 above |

4. **FIRE PROTECTION SYSTEMS** means all tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes but excluding:

    A. branch piping from a joint system where such branches are used entirely for purposes other than fire protection.

    B. any underground water mains or appurtenances located outside of the described premises and forming part of the public water distributing system.

    C. any pond or reservoir in which the water is impounded by a dam.

5. **FLOOD:**

    A. A general and temporary condition of complete inundation of normally dry land areas, including dewatered areas, from:

        (1) The overflow of inland or tidal waters;

        (2) The unusual and rapid accumulation or runoff of surface water;

        The term "surface water", as used hereunder,  shall mean seepage, leakage or influx of water (immediately derived from natural sources) through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or any other openings in such sidewalks, foundations, walls or floors; and shall also include all water which backs up through sewers and drains

        (3) Mudslides (i.e. mudflows) which are caused by flooding as defined in subparagraph a. (2) above and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current;

    B. The collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding the cyclical levels which result in flooding as defined in a (1) above.

    All whether driven by wind or not.

6. **INSURED PROJECT** means the work which the Insured is contractually obligated to perform in accordance with the contract documents being more fully described and located as set forth in the Declarations.

7. **NAMED WINDSTORM** means a storm that has been declared by the National Oceanic and Atmospheric Administration's (NOAA) National Hurricane Center, National Weather Service or similar governing body to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or a Tropical Depression and including any resulting flood, tidal or wave action and storm surge, being defined as an offshore rise of water associated with a low pressure weather system, typically a tropical cyclone.

**FIRST TIER COUNTIES (in application of Named Windstorm)**

| | |
|---|---|
| Alabama | Baldwin and Mobile |
| Florida | Broward, Collier, Miami - Dade, Monroe, Palm Beach, |
| Georgia | Bryan, Camden, Chatham, Glynn, Liberty and McIntosh |
| Hawaii | All Counties |
| Louisiana | Ascension, Assumption, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion and Washington |
| Maryland | Somerset, Wicomico and Worcester |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River and Stone |
| North Carolina | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, and Jasper |
| Texas | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris (when located inside city limits and east of Hwy 146, the following portions are also included: LaPorte, Morgan's Point, Pasadena, Seabrook and Shore Acres), Jackson, Jefferson, Kennedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, and Willacy |
| Virginia | **Counties:** Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Southampton, Surry and York. **Independent Cities:** Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach and Williamsburg |

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

SECOND TIER COUNTIES (in application of Named Windstorm)

| Alabama | Clarke, Covington, Escambia, Geneva, Houston and Washington |
|---|---|
| Florida | Balance of State (All counties not listed as Zone 1 above) |
| Georgia | Appling, Brantley, Bulloch, Charlton, Effington, Evans, Long, Pierce, Tattnall, and Wayne |
| Louisiana | Acadia, Allen, Beauregard, Calcasieu, East Baton Rouge, East Feliciana, Evangeline, Iberville, Jefferson Davis, Lafayette, Pointe Coupee, St. Helena, St. Landry, West Baton Rouge and West Feliciana |
| Mississippi | Amite, Forrest, Greene, Lamar, Marion, Perry, Pike, Walthall and Wilkinson |
| North Carolina | Bladen, Duplin, Gates, Greene, Hertford, Lenoir, Pitt, Robeson and Sampson |
| South Carolina | Allendale, Bamberg, Clarendon, Dillon, Florence, Hampton, Marion, and Williamsburg |
| Texas | Austin, Bee, Brooks, Colorado, Dewitt, Duval, Fort Bend, Goliad, Grimes, Hardin, Harris (balance not included in Zone 1 above), Hidalgo, Jasper, Jim Hogg, Jim Wells, Lavaca, Liberty, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Victoria, Walker, Waller and Wharton |
| Virginia | Caroline, Charles City, Essex, Henrico, King and Queen, King George, King William, New Kent, Prince George, Richmond, Sussex and Westmoreland |

8. **OCCUPANCY** shall be deemed to have occurred when the **INSURED PROJECT\*** or any portion thereof has been put to its intended use but only as respects such portion or portions put to use. The orientation or training of building management staff, the training of plant engineering and maintenance personnel, the establishment of a sales or rental office and completion of tenant fit out work shall not be considered **OCCUPANCY\*** on its own. See **COMMERCIAL SERVICE\*** above.

9. **OCCURRENCE** With the exception of the perils of **EARTHQUAKE\*, FLOOD\*, NAMED WINDSTORM\*, WINDSTORM\***, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief, **OCCURRENCE\*** means an accident, incident, or a series of accidents or incidents arising immediately out of a single event or originating cause and includes all resultant or concomitant losses wherever located.

   In respect of the perils of **EARTHQUAKE\*, FLOOD\*, NAMED WINDSTORM\*, WINDSTORM\***, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief, **OCCURRENCE\*** shall mean all losses arising during a continuous period of **seventy-two (72)** hours during the term of this policy insofar as the limit of liability, sublimit of liability, aggregate limit of liability and the deductible provisions of the policy are concerned. The Insured may elect the moment when the **seventy-two (72)** hour period begins, but no two such periods shall overlap. Such **EARTHQUAKE\*, FLOOD\*, NAMED WINDSTORM\*, WINDSTORM\***, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief shall be deemed to be a single **OCCURRENCE\*** within the meaning of this policy. The Company shall not be liable for any such loss occurring before the effective date and time or occurring after the expiration date and time of this Policy; however, the Company will be liable for any loss occurring for a period, of up to seventy-two (72) consecutive hours after the expiration of this policy provided that the occurrence takes place prior to the date and time of the expiration of this policy.

10. **SOFTWARE LOSS** means any loss of or damage to any program, software or operating system, programming instruction or data arising out of or resulting from any failure, malfunction, deficiency, deletion, fault, **VIRUS\*** or corruption. **SOFTWARE LOSS\*** includes, but is not limited to, loss or damage resulting from any authorized or unauthorized access in, of or to any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment, any program, computer software or operating systems, programming instructions or data.

11. **TESTING:**

    A. **HOT TESTING\*** - Any startup, commissioning or other forms of testing making use of any feedstock or similar media including operational or performance tests.

    B. Cold Testing - Any functional testing, exclusive of **HOT TESTING\*** as defined above including but not limited to electrical, mechanical, hydraulic, hydrostatic and pneumatic.

    C. For the purposes of the foregoing definitions, startup and testing of building systems shall be considered Cold Testing.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

12. **TESTING PERIOD** As respects **HOT TESTING\*, TESTING PERIOD\*** shall mean and be limited to that period beginning with the introduction into the insured property of feedstock or similar media for processing and handling or the commencement of supply to a system and continuously thereafter whether or not such testing, commissioning or startup is continuous or intermittent and terminating on the expiry of the period of time as provided in Paragraph 5 of the Declarations.

13. **TOTAL CONTRACT VALUE or TOTAL COMPLETED VALUE** means the total value of all property insured including, but not limited to, all wages, expenses, materials, supplies, equipment, change orders plus if declared, contractor's profit and overhead, existing structures (when coverage is included by endorsement) and such other charges, all whether provided by the owner, contractors or others, which will become a part of or will be expended in the project plus the value, if any, of **SOFT COSTS\*, RENTAL INCOME\*** or **GROSS EARNINGS\*** to be insured under the Delay In Completion Endorsement when applicable.

14. **VIRUS** means any software, data or code that affects the operation or functionality of any computer, communication system, file server, networking equipment, computer system, computer hardware, data processing equipment, computer memory, microchip, microprocessor (computer chip), integrated circuit or similar device in computer equipment, program, computer software or operating systems, programming instructions or data including, but not limited to, any destructive program, computer code, computer virus, worm, logic bomb, denial of service attack, smurf attack, vandalism, Trojan Horse or any other data introduced into any electronic system causing deletion, destruction, degradation, corruption, malfunction or compromise to data, software or electronic business systems.

15. **WATER DAMAGE** means physical loss or damage as covered by this Policy which is a result of leakage of fluids, liquids, gases and / or similar media caused by other than the peril of **FLOOD \***.

16. **WINDSTORM** means an atmospheric disturbance accompanied by wind, including any substance driven by wind, rain, hail, sleet, thunderstorm, tornado or any combination of the foregoing and including any resulting flood, tidal or wave action and not defined under **NAMED WINDSTORM.**

---

## Completed Value Builders Risk
## SECTION IV – General Conditions

---

1. **OBSERVANCE OF CONDITIONS:**

   The due observance and fulfillment of the terms and conditions of this policy by the Insured, insofar as they relate to anything to be done or complied with by them, shall be a condition precedent to any liability of the Company to make payment for loss under this policy.

2. **INCREASED HAZARD:**

   If the circumstances in which this insurance was entered into shall be altered or if the risk shall be materially increased, the Insured shall as soon as possible give notice in writing to the Company.

3. **MISREPRESENTATION & FRAUD:**

   This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or in case of any fraud, attempted fraud or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

4. **ERRORS & OMISSIONS:**

   No unintentional errors or omissions in any information required to be reported to the Company or otherwise relative to this insurance will prejudice the Insured's right of recovery, but will be reported to the Company as soon as practicable when discovered.

5. **INSPECTION & AUDIT:**

   While this policy is in effect, the Company can, at any reasonable time, inspect the insured property and operations. However, neither the Company's inspection nor any report thereof can serve as any representation that the insured property or operations are safe or healthful, or that they comply with any law, rule or regulation.

   Books and records will be kept by the Insured in such a manner that the total project cost of the work and the exact amount of any loss or damage covered by this policy can be accurately determined. The Company may examine and audit the Insured's books and records at any reasonable time during the policy period and within one year after the final termination of the policy, as long as they relate to the subject matter of this policy.

6. **CLAIM AGAINST TRANSIT CARRIER AND/OR BAILEE:**

   No claim for loss or damage during transit shall be payable hereunder until the Insured has filed a claim with and made reasonable efforts to secure payment from the transporting carrier and the carrier has denied liability.

7. **PROTECTION OF PROPERTY:**

   The Insured will take reasonable steps to protect, recover or save the property insured and minimize any further or potential loss or damage when:

   A. The property insured has sustained direct physical loss or damage by an insured peril; or

   B. The property insured is in imminent danger of sustaining direct physical loss or damage from:

   (1) **NAMED WINDSTORM\*, WINDSTORM\*** or other related perils, but only when the potential for the same to occur has been forecasted by the National Weather Service or similar recognized weather forecast service(s);

   (2) **FLOOD\***, but only when the potential for the same to occur has been forecasted by the National Weather Service or the U.S. Army Corps of Engineers.

   (3) Fire;

   The acts of the Insured or the Company in protecting, recovering or saving the property insured will not be considered a waiver or an acceptance of abandonment. The Insured and the Company will bear the expense incurred proportionate to their respective interests.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

The foregoing shall not serve to increase the Limit of Liability stated in the DECLARATIONS and shall be subject to the deductible provisions of the policy.

8. **EXAMINATION UNDER OATH:**

The Insured shall submit and, so far as is within their power, shall cause all other persons to submit, to examination under oath by any persons named by the Company relative to any and all matters in connection with a claim and shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by the Company or its representatives and shall permit extracts and copies thereof to be made.

9. **IN CASE OF LOSS:**

   A. **Notice of Loss:**

   The Insured will, as soon as practicable, report in writing to the Company every loss **OCCURRENCE*** which may give rise to a claim under this policy. * *Refer to Claim Reporting Procedures attached to the policy.*

   B. **Proof of Loss:**

   The Insured will, as soon as practicable, file with the Company a signed and sworn detailed proof of loss stating to the best knowledge and belief of the Insured the time and cause of loss or damage and the interest of the Insured and others in the property so affected..

   C. **Payment of Loss:**

   All adjusted claims, including partial payments thereon, will be due and payable no later than **(60) sixty** days after presentation and acceptance of proof of loss or partial proof of loss, as the case may be, by this Company or its appointed representative.

10. **PARTIAL LOSS:**

The Company hereby grants permission to repair any partial damage to the property insured which can be conveniently and advantageously undertaken by the Insured. The Company will reimburse the Insured who has suffered the loss for the actual cost of such repairs, subject always to the applicable deductible and limits of liability stated in the Declarations. Nothing in this clause shall be deemed to have waived the requirement that notice of loss be given forthwith to the Company as provided in the policy.

11. **SUBROGATION:**

If the Company pays a claim under this policy, it will be subrogated, to the extent of such payment, to all the Insured's rights of recovery from other persons, organizations and entities. The Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The Company will have no rights of subrogation against:

   A. Any person or entity, which is a Named Insured or an Additional Insured;

   B. Any other person or entity, which the Insured has waived its rights of subrogation against in writing before the time of loss;

Notwithstanding the foregoing, it is a condition of this policy that the Company shall be subrogated to all the Insured's rights of recovery against:

   A. any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

   B. any manufacturer or supplier of machinery, equipment or other property, whether named as an Insured or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

The Insured will act in concert with the Company and all other interest concerned in the exercise of such rights of recovery. The Insured will do nothing after a loss to prejudice such rights of subrogation.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery, will accrue first to the Company. Any excess of this amount will be remitted to the Insured. If there is no recovery, the interests instituting the proceedings will bear the expense of the proceedings proportionately.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

**12. CONTRIBUTING INSURANCE:**

Permission is granted for other policies written upon the same terms, exclusions, limitations and conditions as those contained herein. This policy will contribute to the total of each loss otherwise payable herein to the extent of the participation of this policy in the total limit of liability as provided by all policies written upon the same terms, exclusions, limitations and conditions as those contained in this policy.

**13. EXCESS INSURANCE:**

Permission is granted the Insured to have excess insurance over the limit of liability set forth in this policy without prejudice to this policy, nor will the existence of such insurance, if any, reduce any liability under this policy.

**14. OTHER INSURANCE:**

Except as stated in CONTRIBUTING INSURANCE and EXCESS INSURANCE above, if there is other collectible insurance, this policy will cover as excess insurance and will not contribute with such other insurance.

**15. UNDERLYING INSURANCE:**

Permission is given for the Insured to purchase insurance on all or any part of the deductible(s) or perils of this policy. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

**16. RECOVERY OR SALVAGE:**

Any recovery or salvage excluding proceeds from subrogation and other insurance recovered or received after a loss settlement under this policy or any recovery from surety ship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company will apply as if recovered or received prior to the loss settlement and the loss will be readjusted accordingly.

**17. REINSTATEMENT:**

With the exception of loss caused by perils or coverage which is subject to an aggregate limit, any loss hereunder will not reduce the amount of this policy.

**18. BANKRUPTCY OR INSOLVENCY:**

Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations under this policy.

**19. BRANDS & TRADEMARKS:**

In case of loss or damage by an insured peril to insured property bearing a brand, trademark or label, the Company may take all or any part of the property at any agreed or appraised value. If so, the insured may, at their own expense:

**A.** Stamp salvage on the property or its container, if the stamp will not physically damage the property; or

**B.** Remove the brand, trademark or label, if doing so will not physically damage the property. The Insured must re-label the property or its container to comply with the law.

**20. ENTRY, CONTROL, ABANDONMENT:**

After loss or damage to insured property, the Company shall have an immediate right of access and entry by accredited agents sufficient to enable them to survey and examine the property, and to make an estimate of the loss or damage and, after the Insured has secured the property, a further right of access and entry sufficient to enable them to make an appraisal or estimate of the loss or damage, but the Company shall not be entitled to the control or possession of the property, and without the consent of the Company there can be no abandonment of the property insured.

**21. PAIR & SET:**

**A.** In the event of loss of or damage to any insured article or articles which are part of a pair or set, the measure of loss of or damage to such article or articles will be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event will such loss or damage be construed to mean total loss of the pair or set; or

**B.** In the event of loss or damage to any part of property insured consisting, when complete for use, of several parts, the Company will only be liable for the value of the part lost or damaged.

22. **APPRAISAL:**

If the Insured and the Company fail to agree as to the value of the property or the amount of loss, either may make written demand for an appraisal. In this event, each party will choose a competent and impartial appraiser within **twenty (20)** days after receiving a written request from the other. The appraisers will then select an umpire. If they can not agree upon an umpire within **fifteen (15)** days, either may request the selection by a judge of a court having jurisdiction. The appraisers will then appraise the loss, stating separately the value of the property and the amount of loss to each item, and failing to agree, will submit their differences to the umpire. A decision in writing, so itemized, of any two will be binding. Each party will pay its chosen appraiser and bear the other expense of the appraisal and umpire equally. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

23. **ASSIGNMENT:**

Except in the event of an authorized assignment under the Bankruptcy Act or a change of title by succession, operation of law or death, the Named Insured agrees not to transfer any legal rights or interests in the policy without the Company's written consent.

24. **BENEFIT TO BAILEE:**

This policy will not inure, directly or indirectly, to the benefit of any carrier or bailee.

25. **SUIT AGAINST THE COMPANY:**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes, or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Hiscox Inc. 357 Main Street, Armonk, New York 10504, or his or her representative, and that, in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States, which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

No suit, action or proceeding against the Company or this policy for the recovery of any claim will be sustainable in any court of law or equity unless the Insured will have fully complied with all the requirements of this policy. The Company agrees that any action or proceeding against it for recovery of any loss under this policy will not be barred if commenced within **(12) twelve** months after the **OCCURRENCE\*** become known to the Insured unless a longer period of time is provided by applicable statute.

26. **VALUATION:**

At the time and place of loss, the basis of adjustment of a claim, unless otherwise endorsed herein, shall be as follows:

A. **Property Under Construction** - Cost to repair or replace the property lost or damaged at the time and place of loss with material of like kind and quality less betterment including contractor's profit, general conditions and overhead and including owner's indirect expenses to the extent declared as part of the **TOTAL COMPLETED VALUE\***, but in no event to exceed the Limit of Liability; if not so replaced then loss shall be settled on the basis of Actual Cash Value with proper deduction for depreciation.

B. **Property Of Others** (including items supplied by the Owner) - at owner's cost or other actual cash value, whichever is greater, including the contractor's charges.

C. **Temporary Works** - Cost to repair or replace the property lost or damaged with material of like kind, quality and condition but in the event not replaced recovery will not exceed Actual Cash Value.

D. **Plans, Blueprints, Drawings, Renderings, Specifications or Other Contract Documents and Models** - At the cost to reproduce the property with other property of like kind and quality including the cost of gathering or assembling information from back up data if replaced, or if not replaced, at the value of blank material;

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

**E.    Trees, Shrubs, Plantings and Landscaping** - At cost to replace with property of like kind, quality and size plus the proper proportion of labor expended if such damage occurs after installation.

**F.    Property In Transit** – The invoice cost plus accrued shipping charges less shipper's liability, if any.

### 27.  STATUTES:

If any Article(s) herein stated conflict with the laws or statutes of any jurisdiction within which this policy applies, such Article(s) are hereby amended to conform to said laws or statutes.

### 28.  TITLES OF PARAGRAPHS:

The several titles of the various paragraphs of this form and endorsements attached to this policy are inserted for reference and shall not be deemed in any way to affect the provisions to which they relate.

### 29.  CONFLICT OF WORDING:

The conditions contained in this manuscript form shall supersede those of the printed conditions to which this form is attached, wherever the same may conflict. Where there is a conflict between the manuscript form and the printed conditions of this policy, the conditions of the specific section shall prevail.

### 30.  COVERAGE TERRITORY:

This provision of the policy modifies insurance provided under the following: payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

### 31.  MORTGAGE HOLDERS

**A.**    Loss or damage to the property insured under this Policy will be payable to the mortgagee (or trustee) as named in this Policy or on an ACORD Certificate of Insurance issued to confirm coverage under this Policy, as their interest may appear, under all present or future mortgages upon the property insured in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages and this insurance, as to the interest of the mortgagee (or trustee) only therein, will not be invalidated by any act or neglect of the mortgagor or owner of the property insured, or by any foreclosure or other proceedings or notice of sale relating to the property insured, nor by any change in the title or ownership of the property insured, nor by the occupation of the **INSURED PROJECT**\*  for purposes more hazardous than are permitted by this Policy, provided, that if the mortgagor or owner neglects to pay any premium due under this Policy, the mortgagee (or trustee) will, on demand, pay the same.

**B.**    Provided also that the mortgagee (or trustee) will notify the Company of any change in ownership, occupancy or increase in hazard which becomes known to them and, unless permitted by this Policy, it will be noted thereon and the mortgagee (or trustee) will, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this Policy will be null and void.

**C.**    The Company reserves the right to cancel this Policy at any time as provided by its terms, but in such case this Policy will continue in force for the benefit of the mortgagee (or trustee) for ten (10) days after notice to the mortgagee (or trustee) of such cancellation and will then cease, and the Company will have the right, on like notice, to cancel this agreement.

**D.**    Whenever the Company will pay the mortgagee (or trustee) any sum for loss under this Policy and will claim that, as to the mortgagor or owner, no liability therefore existed, the Company will, to the extent of such payment, be thereupon legally subrogated to all rights of the party to whom such payment will be made, under all securities held as collateral to the mortgage debt or may, at its option, pay to the mortgagee (or trustee) the whole principle due or to grow due on the mortgage with interest, and will thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation will impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

### 32.  ALTERNATIVE DISPUTE RESOLUTION

If the Company and the Named Insured disagree, after making a good faith effort to reach an agreement on an issue concerning this Policy, either party may request that the following procedure be used to settle such disagreement:

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

A. The Company or the Named Insured may request of the other in writing that the dispute be settled according to an alternative dispute resolution procedure.

B. If the Company and the Named Insured agree to proceed, they will jointly select an alternative dispute resolution technique for resolution of the dispute.

C. If the parties cannot agree on a method to resolve the issue in dispute within sixty days of written request, the parties will contact either the Center for Public Resources or the American Arbitration Association and will use their services to select or devise a dispute resolution mechanism.

D. Alternative dispute resolution procedures that may be used include, but are not limited to, mediation, binding arbitration and mini-trials, except where prohibited by applicable law or regulation.

E. All expenses of the alternative dispute resolution procedure will be shared equally by both parties.

F. Any decision or award made as a result of the alternative dispute resolution procedure shall always be limited by the Coverage Terms and Conditions, Limits, Sublimits and Aggregate Limits of Liability of this Policy.

G. Any statute of limitation that may be applicable to the dispute shall be tolled, with respect to such dispute, from the date that the Company and the Named Insured agree to follow the procedure set forth herein until and including the date that such procedure is concluded.

If the Named Insured so requests, the Company hereby agrees to use the alternative dispute resolution procedure described above to resolve all issues concerning this Policy except the following:

A. Any dispute involving asbestos including loss, damage or debris removal expense.

B. Any dispute involving debris removal expense for **CONTAMINANTS OR POLLUTANTS***.

C. Any dispute where coverage is denied based on arson or other attempted fraud by the Named Insured.

D. Any dispute within the scope of and governed by the APPRAISAL clause, above.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK

## CLAIM REPORTING PROCEDURES

All claims for **Hiscox – Construction /Completed Civil Works -Property Claims**, regardless of location should be reported to the YORK Risk Services Group, Inc. SLA office in Charlotte, NC:

**York Risk Services Group, Inc.**
**Specialized Loss Adjustments**
**Construction Risk**
**10610 Independence Pointe Parkway, Suite C**
**Matthews, NC 28105**

York's SLA Construction Risk office is ready to accept new losses and provides three ways for you to submit new loss reports:

1. **Email:** bill.kasper@yorkrsg.com
2. **FAX:** 704-752-6911
3. **Telephone:** 704-502-3861

**To expedite the handling of your new claim, the following information must be provided when reporting a claim:**

1. **York Client Code:**       3813

2. **Named Insured**    dck north america, LLC

3. **Policy Number**   UNS2516200.11

4. **Claim Number**

The York Risk Services Group, Inc., Construction Risk SLA office in Charlotte, NC will review all claims notices upon receipt and assign to the appropriate York general adjuster. A claim acknowledgement will then be transmitted to the designated individuals advising of the York claim number and the adjuster assigned to the claim.

<u>Key Contacts:</u>

| | |
|---|---|
| Bill Kasper, Executive General Adjuster<br>Bill.kasper@yorkrsg.com | (704) 502-3861 |
| David Diedrich, National General Adjuster<br>David.diedrich@yorkrsg.com | (312) 217-0072 |
| John Couture, VP<br>John.couture@yorkrsg.com | (312) 810-1650 |

Attached to and forming part of Policy No: **UNS2516200.11** on behalf of Lloyd's Syndicate 3624 through Hiscox Inc.

Electronically Filed 09/05/2017 15:24 / / CV 17 885483 / Confirmation Nbr. 1163717 / CLDMK